UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WADE L. SANFORD,<br><br>               Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>               Defendant. | CASE NO. 13-cv-05236 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: April 25, 2014 |

    This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 13, 16 17).

    After considering and reviewing the record, the Court finds that the ALJ's conclusion that plaintiff's bowel condition improved in July 2010 is undermined by more recent treatment notes, some of which were submitted for the first time to the Appeals

1  Council, showing that plaintiff continued to complain of, and seek treatment for, his

2  bowel condition after July 2010.  This case should be remanded to permit the ALJ to

3  reassess the evidence related to plaintiff's bowel condition in light of the entire record.

## BACKGROUND

Plaintiff, WADE SANFORD, was born in 1964 and was 43 years old on the alleged date of disability onset of October 15, 2007 (*see* Tr. 203). Plaintiff has a high school diploma and served four years of active duty in the U.S. Army and one year in the reserves before his honorable discharge (Tr. 54).   Plaintiff worked as a household mover/driver from April 1990 until October 15, 2007 (Tr. 67-68), when he was involved in a head-on collision (Tr. 304).

According to the ALJ, "from October 15, 2007 through July 27, 2010, . . . , the claimant had the following severe impairments: lumbar spine degenerative disc disease, status post L5-S1 fusion; cervical spine degenerative disc/joint disease; nervous bowel/chronic diarrhea; and major depressive disorder (20 CFR 404.1520(c))" (Tr. 28).

At the time of the hearing, plaintiff was living alone in a small house (Tr. 54).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") under 42 U.S.C. § 423 of the Social Security Act (Tr. 203-09).  The application was denied initially and following reconsideration (Tr. 112-14, 117-18). Plaintiff's requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on August 17, 2011 (*see* Tr. 48-83). A supplemental hearing was held on December 14, 2011 (*see* Tr. 84-109). On January 6, 2012, the ALJ issued a written decision finding that plaintiff was

disabled under the Social Security Act from October 15, 2007, through July 27, 2010, but not disabled thereafter (*see* Tr. 20-47).

On February 11, 2013, the Appeals Council denied plaintiff's request for review, making the ALJ's written decision the final agency decision subject to judicial review (Tr. 1-7). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in March 2013 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on June 5, 2013 (*see* ECF Nos. 10, 11).

As summarized in defendant's Responsive Brief, plaintiff raises the following issues: (1) Whether or not substantial evidence supports the ALJ's conclusion that plaintiff's bowel condition improved on July 27, 2010; (2) Whether or not substantial evidence supports the ALJ's conclusion that plaintiff's carpal tunnel syndrome did not significantly limit his ability to work; and; (3) Whether or not the ALJ adequately accounted for plaintiff's bending restriction (*see* ECF No. 16, p. 2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

*Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp., supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

DISCUSSION

**I.   Whether or not substantial evidence supports the ALJ's conclusion that plaintiff's disability ended on July 27, 2010.**

Plaintiff raises two alternative challenges to the ALJ's findings regarding disability cessation. First, he argues that the ALJ erred in deviating from the medical expert's testimony in selecting the date of disability cessation. Second, plaintiff argues that the ALJ's finding that his bowel condition improved, and therefore he ceased to be disabled, is not supported by substantial evidence.

    A.   Selection of the disability cessation date

At the second administrative hearing, the medical expert testified that plaintiff was disabled until October 2010 (Tr. 100). The ALJ gave significant weight to the medical expert's testimony in his written decision, but found that plaintiff was disabled only through July 27, 2010 (Tr. 33, 37) -- approximately three months earlier than the medical expert had indicated. Plaintiff argues that the ALJ was required to credit the medical expert's testimony regarding the disability cessation date, and that he erred in failing to do so. ECF No. 13, p. 5 (citing Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *3 (Jan. 1, 1983)).

The Commissioner contends that the medical expert's testimony was equivocal as to the disability cessation date, noting that he testified that plaintiff's gastrointestinal complaints continued "into 2010 sometime" and then apparently resolved (Tr. 99). According to the Commissioner, the ALJ was entitled to resolve the ambiguity in the medical expert's testimony and determine a cessation date supported by the medical evidence.

The Commissioner's characterization of the medical expert's testimony as "ambiguous" is not supported by the record. The ALJ himself indicated, during his questioning of the medical expert, that he noticed that plaintiff's treatment notes indicated normal findings on gastrointestinal testing in "July or August of [2010]" (Tr. 99), but when the medical expert was directly asked by counsel when plaintiff met or equaled a listing, he testified as follows:

> [Medical expert]: . . . I would – you know, my personal opinion would be up to, up to October of [2010], closed period.

1        [Counsel]: I'm sorry, he would equal it up to October [2010]?

2        [Medical expert]: Yeah, up to 10/2010.  Before then he was having trouble with his bowel.

3

4        [Counsel]:  Okay, and then since October of 2010, well, I guess, I, I have to ask you, I don't quite understand the answer.  What was significant in October of 2010?

5

6        [Medical expert]:  Well, it looks like he hasn't had a lot of treatment for his bowels.

7

8        [Counsel]: Okay.

    [Medical expert]: Since then, since then.

9

10   Tr. 100.  The ALJ acknowledged as much in part of his decision (Tr. 33 ("According to

11   Dr. Newman, the medical records since October 2010 do not indicate ongoing, significant

12   treatment for bowel complaints."), but he also characterized the medical expert's

13   testimony as consistent with his own findings elsewhere in the decision (Tr. 30, 33

14   (stating that the medical expert found that plaintiff's combination of impairments equaled

15   Listing 1.04 through July 27, 2010)).  Contrary to the ALJ's statement, the medical expert

16   did *not* testify that the period when plaintiff met a listing ended in July 2010..

17       Nonetheless, the Commissioner correctly notes that the ALJ indicated why he

18   found plaintiff's cessation date to be July 27, 2010: he cited plaintiff's July 27, 2010

19   gastroenterology test results showing normal findings and improved symptoms (Tr. 30

20   (citing Tr. 478-79)).  Because the ALJ's reasoning as to setting the disability cessation

21   date can be logically inferred from his decision, and is supported by substantial evidence

22   in the record, his error in characterizing the medical expert's testimony is harmless.  *See*

23

24

*Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Although plaintiff contends that the ALJ was bound to rely on medical expert testimony in establishing the disability cessation date, none of the authorities he cites involve cases of disability cessation. *See Armstrong v. Comm'r of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) (addressing inferring a disability onset date); *DeLorme v. Sullivan*, 942 F.2d 841, 848 (9th Cir. 1991) (same); *see also Cooper v. Astrue*, 2001 WL 5276554, at *7 (D. Or. Sept. 20, 2011) (holding that the ALJ's duty to obtain medical expert testimony to infer a disability onset date does not extend to situations where an ALJ determines a disability cessation date). Thus, the ALJ properly considered the entire record before him when finding that plaintiff's disability ended on July 27, 2010, and plaintiff has not established that the ALJ committed harmful error when deviating from the medical expert's testimony.

B.  <u>Evidence of improvement of plaintiff's bowel condition</u>

Arguing in the alternative to his previous assignment of error, plaintiff contends that the ALJ erred in finding that plaintiff's bowel condition improved at all. As support for his argument, plaintiff cites treatment notes referring to chronic irritable bowel syndrome ("IBS") or chronic diarrhea as evidence that his bowel condition continued beyond July 27, 2010 (ECF No. 17, p. 3 (citing Tr. 472, 475, 478, 486, 499, 711-12, 716-17, 729, 741, 759, 779, 783)). Some of these cited treatment notes actually pre-date the disability cessation date, and thus do not establish that plaintiff's condition continued beyond July 27, 2010 (Tr. 472, 475, 478, 486, 499). Other cited treatment notes list a

bowel condition in a summary of diagnoses, but do not mention any contemporaneous treatment for the condition (Tr. 711-12, 716-17, 729, 741). The most recent treatment notes, however, including some that were submitted for the first time to the Appeals Council, mention plaintiff's continued bowel complaints during 2011 and suggest a course of treatment and follow-up testing (Tr. 759, 779, 783).

The most recent evidence -- especially the evidence submitted for the first time to the Appeals Council -- undermines the ALJ's finding that plaintiff's bowel condition improved as of July 28, 2010. In December 2011 and January 2012, plaintiff sought specialized follow-up with his primary care clinic and then a gastroenterology clinic, reporting continued, chronic symptoms (Tr. 759, 779). The specialists formulated a treatment plan, recommending a colonoscopy "w/TI intubation" and other alternatives including medication and diet modification (Tr. 779).

The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit did not require a finding that plaintiff had good cause for failing to produce the new evidence earlier. *See Ramirez, supra*, 8 F.3d at 1451-54; *see also Taylor, supra*, 659 F.3d at 1232. Recently, the Ninth Circuit held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or

not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); s*ee also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) ("[s]entence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented *before the agency*") (emphasis added) (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991); *cf. Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Because more recent evidence indicates that plaintiff sought treatment for his bowel condition after July 2010, and continued to report similar symptoms to those he reported pre-July 2010, the ALJ should on remand reassess his finding of medical improvement in light of the entire record.

**II.    Whether or not substantial evidence supports the ALJ's conclusion that plaintiff's carpal tunnel syndrome did not significantly limit his ability to work.**

The ALJ summarized the medical evidence regarding plaintiff's carpal tunnel syndrome ("CTS") at step two, concluding that it did not cause significant functional limitations in plaintiff's ability to do basic work activities. Plaintiff argues that the ALJ overlooked his complaints of hand numbness, and thus should have found his CTS to be severe at step two. The Commissioner does not dispute that plaintiff's CTS is medically determinable, but argues that the ALJ did not err in finding that it was not severe because even on appeal plaintiff has failed to identify any particular limitations caused by CTS.

A. <u>Legal standards at step two</u>

Step two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90; 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting* SSR 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," when the disability evaluation process ends at step two. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen*, 482 U.S. at 153-54).

B. <u>CTS evidence</u>

The evidence plaintiff cites supports the ALJ's finding that his CTS was medically determinable, but does not establish that it was severe. For example, plaintiff cites an

occupational therapist's order for splints and further imaging studies to help determine whether surgical intervention was warranted (Tr. 734-36), but this evidence alone does not establish that plaintiff's CTS caused more than a minimal effect on his ability to work. Instead, testing on plaintiff's ability to use his hands (measuring range of motion, grip strength,[1] motor strength) revealed no limitations (Tr. 733), and a treating physician opined that plaintiff had no limitations on simple grasping, pushing, pulling, or fine manipulation (Tr. 557). Plaintiff curiously argues that a lack of functional limitation does "not mean [his] diagnosed carpal tunnel was not severe" (ECF No. 13, p. 8), but he is mistaken. An impairment is severe only if it significantly limits a claimant's ability to perform basic work activities, and plaintiff has not identified any evidence showing that his CTS caused him any limitation in his ability to perform basic work activities. Thus, plaintiff has failed to establish a step-two error.

**III.   Whether or not the ALJ adequately accounted for plaintiff's bending restriction.**

The ALJ's residual functional capacity ("RFC") assessment restricted plaintiff from bending (Tr. 34). Plaintiff argues that in light of this finding, the ALJ should have asked the vocational expert ("VE") whether a preclusion on stooping (one form of bending) would result in a finding of disability.

Plaintiff's argument relies on SSR 83-14 and SSR 96-9p, which suggests that an ALJ should not rely solely on the Medical-Vocational Guidelines to determine whether a

---

[1] On one occasion, plaintiff's grip strength was reduced (Tr. 735).

claimant is capable of performing work existing in significant numbers if a claimant is precluded from stooping.  SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983); SSR 96-9p, 1996 WL 374185, at *8 (Jul. 2, 1996).  But in this case, the ALJ did not rely on the Medical-Vocational Guidelines; instead he consulted a VE, who testified that even with a bending prohibition, plaintiff could nonetheless perform the jobs of folder, production line solder, and semiconductor die loader (Tr. 76-77).

Plaintiff cites a Seventh Circuit Court of Appeals case remanding a case to an ALJ for reassessment in light of SSR 96-9p, which was promulgated after the ALJ's decision had been entered.  *See Lauer v. Apfel*, 169 F.3d 489 (7th Cir. 1999).  In *Lauer*, the ALJ found the claimant unable to stoop, and did not consult a VE but appeared to rely on the Medical-Vocational Guidelines to find him not disabled.  169 F.3d at 491.  In light of SSR 96-9p's suggestion that a stooping prohibition would usually result in a finding of disability, the Seventh Circuit remanded the case to the ALJ for reassessment in light of that new administrative guidance.  *Lauer*, 169 F.3d at 493.

*Lauer* is not applicable to this case for a number of reasons.  First, it is a Seventh Circuit opinion, and is therefore not binding on this court.  Second, the ALJ in *Lauer* relied on the Medical-Vocational Guidelines without assistance from a VE, whereas the ALJ in this case obtained VE testimony.  Third, the timing of the ALJ's decision in *Lauer* — entered before SSR 96-9p had been promulgated — further distinguishes it from this case, where the ALJ's decision was rendered with a full opportunity to consider SSR 96-9p's implications.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13

Plaintiff erroneously suggests that the ALJ erred in failing to "connect the preclusion on bending with the preclusion on work" (ECF No. 17, p. 8), a contention that even *Lauer* rejects. 169 F.3d at 493 ("There is no basis to assert that SSR 96-9p requires a finding of disability in cases where a claimant is unable to stoop."). Because the ALJ appropriately sought VE testimony in this circumstance, Plaintiff has not established error as to the ALJ's bending restriction.

## CONCLUSION

The ALJ's finding that plaintiff's bowel condition improved in July 2010 is undermined by more recent treatment notes, some of which were submitted to the Appeals Council for the first time, showing that his symptoms continued and that he sought additional treatment. On remand, the ALJ should reassess the evidence related to plaintiff's bowel condition in light of the entire record.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1 Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2 matter for consideration on April 25, 2014, as noted in the caption.

3  Dated this 28th day of March, 2014.

*[signature]*

J. Richard Creatura
United States Magistrate Judge